## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

**DANIEL HATTEN (K9677)**                                              **PLAINTIFF**

**v.**                                                          **No. 4:20CV107-DAS**

**WARDEN LEE SIMON**
**WARDEN TIMOTHY MORRIS**
**SUPERINTENDENT MARSHALL TURNER**
**COMMISSIONER PELICIA HALL**
**ARP DIRECTOR RICHARD PENNINGTON**
**MDOC**                                                          **DEFENDANTS**

### MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Daniel Hatten, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that he was subjected to unconstitutionally harsh general conditions of confinement while housed at the Mississippi State Penitentiary in Parchman. The defendants have moved [29] for summary judgment, arguing that this case should be dismissed because Mr. Hatten did not exhaust the prison grievance process before filing the instant suit. For the reasons set forth below, the defendant's motion [29] for summary judgment will be granted, and the instant case will be dismissed without prejudice for failure to exhaust administrative remedies.

### Factual Allegations

Mr. Hatten was housed in Unit 29 at the Mississippi State Penitentiary from 2018 to 2020. During that time, he alleges that he lived with rat infestation, flooding of sewage, no lights, power, or running water in his cell during a certain time, broken cell windows, flooding when it rained, dirty showers, an inoperative heater, and insufficient staffing. Doc. 1. He also seeks monetary compensation of $2 million for physical, mental, and emotional damages. Doc. 1 at 5.

### Failure to Exhaust Administrative Remedies

The documents the parties have provided reveal that the plaintiff did not exhaust the prison grievance process before filing the instant suit. The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires prisoners to exhaust any available administrative remedies prior to filing suit under 42 U.S.C. §1983. The exhaustion requirement protects administrative agency authority, promotes efficiency, and produces "a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S.81, 89 (2006). A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006); see also *Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008)( the Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement)(*citing Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)); *Lane v. Harris Cty.Med.Dep't*, No. 06-20935, 2008 WL 116333, at *1 (5th Cir. Jan.11,2008)( under the PLRA, "the prisoner must not only pursue all available avenues of relief; he must also comply with all administrative deadlines and procedural rules").

The requirement that claims be exhausted prior to the filing of a lawsuit is mandatory. *Gonzalez v. Seal*, 702 F.3d 785 (5th Cir.2012). "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir.

2010). As "exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Id*. at 272.

Mississippi Code Annotated § 47-5-801 grants the Mississippi Department of Corrections the authority to adopt an administrative review procedure at each of its correctional facilities. Under this statutory authority, the Mississippi Department of Corrections has set up an Administrative Remedy Program ("ARP") through which an inmate may seek formal review of a grievance relating to any aspect of his incarceration. This court approved the ARP Program in *Gates v. Collier*, GC 71-6-S-D (N.D. Miss. Feb. 15, 1994). *See also Marshall v. Price*, 239 F.3d 365, 2000 WL 1741549, at *1 (5th Cir. Nov. 6, 2000). On September 19, 2010, the ARP process was changed from three steps to two. *See Gates v. Barbour*, No. 4:71CV6-JAD, Doc. 1242 (N.D. Miss. Aug. 19, 2010); *Threadgill v. Moore*, No. 3:10CV378-TSL-MTP, 2011 WL 4388832, at *3 n.6 (S.D. Miss. July 25, 2011).

The two-step ARP process begins when an inmate first submits his grievance in writing to the prison's Legal Claims Adjudicator within thirty days of the incident. *Howard v. Epps*, No. 5:12CV61-KS-MTP, 2013 WL 2367880, at *2 (S.D. Miss. May 29, 2013). The Adjudicator initially screens the grievance and determines whether or not to accept it into the ARP process. *Id*. The screening phase operates as a filter – applied before the formal grievance process begins – to remove procedurally defective or otherwise invalid grievances. As set forth above, a prisoner cannot satisfy the exhaustion requirement by filing a procedurally defective grievance or appeal. *Woodford, supra*. Hence, rejection of a grievance during the screening phase terminates the grievance – and does *not* count as exhaustion of the grievance process. *See Seales v. Shaw*, No. 5:15-CV-59-KS-MTP, 2016 WL 616749, at *3 (S.D. Miss. Jan. 26, 2016), *report and recommendation adopted sub nom. Seales v.*

- 3 -

*Wilkinson Cty. Corr. Facility*, No. 5:15-CV59-KS-MTP, 2016 WL 616385 (S.D. Miss. Feb. 16,

2016) (finding rejection during initial MDOC screening process not to constitute exhaustion);

*Goldmon v. Epps*, No. 4:14-CV-0112-SA-SAA, 2015 WL 5022087, at *3 (N.D. Miss. Aug. 24,

2015) (same); *see also  Robinson v. Wheeler*, 338 Fed. Appx. 437 (5th Cir. 2009) (per curiam)

(not reported) (upholding Louisiana initial screening provision of prison grievance process).

However, if the defects in the original grievance were minor ("technical" or "matters of form")

an inmate may submit a corrected grievance (not an appeal of the rejected grievance) within five

days of the rejection:

> If a request is rejected for technical reasons or matters of form, the inmate shall have
> five days from the date of rejection to file his/her corrected grievance.

*See* https://www.mdoc.ms.gov/Inmate-Info/Documents/CHAPTER_VIII.pdf  (last visited April 3,

2019)).

      If accepted, the grievance is forwarded to the appropriate official who then issues a First

Step Response to the complaining inmate.  *Howard, supra.*  If the inmate is unsatisfied with the

first response, he may continue to the Second Step by completing an appropriate ARP form and

sending it to the Legal Claims Adjudicator.  *Id.*  The Superintendent, Warden or Community

Corrections Director will then issue a final ruling, or Second Step Response – which completes

the ARP process.  *Id.*  Issuance of the Second Step Response is the only way to complete the

grievance process.  If the inmate is unsatisfied with that response, he may file suit in state or

federal court.  *Id.*

      In his complaint, Mr. Hatten alleges that he filed ARP grievances regarding living conditions

at Parchman, but they were rejected "for various technical issues," which he believes to be a "tactical

measure" used by the defendants to systematically reject prisoner grievances and prevent inmates

from seeking judicial review. Compl., [1] at 3. In some circumstances, the actions of prison officials can render an administrative remedy unavailable. *Ross v. Blake*, 136 S.Ct. 1850, 1858, 195 L. Ed.2d. 117, 84 USLW 4352 (2016). For example, a grievance process can be rendered unavailable if it operates as a simple dead end despite the promises of regulations or guidance materials. *Id*. at 1858. However, a prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford* at 83-84. Proper exhaustion, including compliance with the prison's procedural rules, is necessary because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings. *Id*. at 90. In this case, Mr. Hatten failed to comply with the prison's procedural rules for filing grievances with the Administrative Remedy Program.

Daniel Hatten filed his first grievance complaining of living conditions in Parchman on February 3, 2020, about a month before his transfer to CMCF. *See* Exhibit "A," Affidavit of Paul R. Pennington, Jr., Director for the Administrative Remedy Program, and Plaintiff's Accompanying Requests for Administrative Remedy, at MDOC-HATTEN-000001. The ARP responded by letter, explaining that his complaint was procedurally defective (because it was unsigned and contained more than one complaint or request ). *Id*. at MDOC-HATTEN-000001-000002. Mr. Hatten filed a second grievance complaining of living conditions at Parchman, to which the ARP Director responded by letter, explaining that the grievance was resolved because he had already been transferred to another facility. *See* Exhibit "A," Affidavit of Paul R. Pennington, Jr., Director for the Administrative Remedy Program, at MDOC-HATTEN-000005.

Mr. Hatten also filed several "sensitive" complaints related to his claim, all of which were denied as constituting "non-sensitive" issues. *See* Exhibit "A," Affidavit of Paul R. Pennington, Jr., Director for the Administrative Remedy Program, and Plaintiff's Rejected "Sensitive" ARPs, at

MDOC-HATTEN-000017-000025. There is no record of Mr. Hatten having followed instruction and resubmitted his grievances properly to the ARP program. *See* Exhibit "A," Affidavit of Paul R. Pennington, Director for the Administrative Remedy Program, at MDOC-HATTEN-000017.

Mr. Hatten filed ARP No. MSP-20-782 after the thirty-day time limit for ARP processing had expired, and after he had already been transferred to CMCF. *See* Exhibit "A," Affidavit of Paul R. Pennington, Director for the Administrative Remedy Program, and ARP No. MSP-20-782, at MDOC-HATTEN-000037- 000041. Thus, his administrative grievance was untimely.

In sum, Mr. Hatten's ARPs and written complaints regarding the living conditions at Parchman were untimely and procedurally defective. The rejection of his grievances as untimely and noncompliant was not a "tactical measure" by the defendants to block his attempt to seek relief in the courts; instead, the rejections served as guidance, informing him how to submit a corrected grievance). For these reasons, Mr. Hatten failed to exhaust the available administrative grievance process before filing suit, as required by the PLRA, and his claims will be dismissed.

## Conclusion

For the reasons set forth above, the motion [29] by the defendants for summary judgment will be granted, and the instant case will be dismissed for failure to exhaust administrative remedies. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 8th day of November, 2021.

/s/ David A. Sanders
DAVID A. SANDERS
UNITED STATES MAGISTRATE JUDGE

- 6 -